# LEVIN-EPSTEIN & ASSOCIATES, P.C.
---
60 East 42nd Street • Suite 4700 • New York, New York 10165
T: 212.792.0046 • E: Joshua@levinepstein.com

February 15, 2023

**Via ECF**
The Honorable J. Paul Oetken, U.S.D.J.
U.S. District Court, Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *Hizmo v. Fiskaa, LLC*
                **Case No.: 1:22-cv-08444-JPO**

Dear Honorable Judge Oetken:

This law firm represents Plaintiff Aheron Hizmo (the "Plaintiff") in the above-referenced action. This letter is submitted pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015), seeking approval of the enclosed Settlement Agreement, which provides for a total settlement amount of $35,000.00.

A copy of the executed Settlement Agreement is attached hereto as "Exhibit A."

A Stipulation of Dismissal with Prejudice is being filed simultaneously with this letter motion, and the parties respectfully request that the court So-Order the Stipulation.

**I.      Procedural History**

This is an action under the Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYLL") brought by one (1) individual against their former employer, for violations of federal, state wage-and-hour laws and common law claims for breach of contract.

Defendant Fiskaa, LLC owns and operates a MEP and design company known as "Fiskaa".

According to the operative Complaint filed on October 4, 2022 [Dckt. No. 1], employed as a design engineer at Fiskaa, LLC from March 2020 through and including July 2022. Plaintiff allegedly worked five (5) days per week: from approximately 9:00 a.m. to 6:00 p.m. (*i.e.,* approximately nine (9) hours each day), for a total for a total period of approximately 45 hours during each of the weeks, respectively.[1]

Plaintiff alleges that Defendants' historic policy and practice was to pay Plaintiff a flat salary, regardless of how many additional hours he worked in a week.

---

[1] Although Defendants' office hours were typically from 9:00 a.m. to 6:00 p.m., daily, Plaintiff claims he was required to, and did in fact, work after hours. Such alleged after hours work typically included responding to emails, answering phone calls, and generally being available "on-call" as-needed, twenty-four (24) hours a day, seven (7) days per week.

Plaintiff alleges that beginning in or around March 15, 2022 (*i.e.,* in the beginning of the COVID-19 pandemic) until approximately December 2021, Defendant withheld a significant percentage of Plaintiff's, and all similarly situated employees' salaries, under the express understanding that these withheld amounts would be repaid in the future. Plaintiff claims that Defendant repeatedly promised Plaintiff, and all similarly situated employees, that their withheld salaries would be repaid "when financial security was better[,]" and when business had normalized. Defendant did not withhold a percentage of Plaintiff's salary in 2022, because Defendant's business had normalized, and Defendant's financial security was better. However, Plaintiff claims Defendant failed to repay Plaintiff, or any of similarly situated employee, their withheld salaries from March 15, 2020 to December 2021, as promised and agreed to.

As a result, Plaintiff alleges that he was entitled to unpaid and/or overtime wages for such time under the FLSA and NYLL.

Plaintiff further alleges that during the relevant time-period, Defendant failed to provide Plaintiff with a proper written notice of their wage rate, pursuant to the NYLL. Plaintiff also alleges that he was not provided with accurate wage statements upon each payment of wages.

Defendant appeared in this case through counsel on November 3, 2022. [Dckt. No. 10]. In the last three (3) or so months, counsel for both parties have engaged in dozens of rounds of negotiations, over multiple phone calls and email exchanges. During these discussions, Defendant – through counsel asserted arguments in support of their contention that Plaintiff was paid for all hours worked, and in response to other material allegations of the Complaint.

On or around January 31, 2023, after multiple rounds of negotiations, the parties reached a resolution in principle to settle this matter for a total sum of $35,000 (the "Settlement Amount") to be paid out in accordance with the terms of the accompanying Settlement Agreement.

The settlement is objectively fair, reasonable, and the product of arm's length negotiations between experienced counsel. For these reasons and those set forth in further detail below, the settlement should be approved.

## II.     The Settlement Agreement is Fair and Reasonable

To determine whether an FLSA Settlement Agreement should be approved as fair and reasonable, courts in the Second Circuit consider the totality of the circumstances, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.*, 2013 WL 4427917, at *2 (S.D.N.Y. 2013) (citation omitted).

**A. The Settlement Sum is Substantial and Fair Given the Plaintiff's Range of Recovery**

The first factor articulated in *Wolinsky* examines "the Plaintiff's range of possible recovery." *Wolinsky,* 900 F.Supp.2d 332, at 335.

The Settlement Agreement satisfies this prong because Plaintiff's proposed ultimate recovery represents approximately 91% of Plaintiff's estimated maximum recovery for unpaid wages under the FLSA / NYLL, and approximately 106% of Plaintiff's estimated maximum recovery under his breach of contract claim. See *Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171 at *2 (S.D.N.Y. 2017) (net settlement of 40% of FLSA Plaintiff's maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. 2017) (net settlement of 29.1% of FLSA Plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) (approving a settlement constituting 25% of the maximum possible recovery).

The method and formula for the derivation of the plaintiff's reasonable range of recovery under the FLSA / NYLL assumes the following, after considering Defendants' contra-narrative of hours worked and compensation received:

i. Plaintiff worked an average of 45 hours per week between the period of March 1, 2020 through July 31, 2022.

ii. Having been paid on a flat, salary basis, Plaintiff's derived regular rate of pay during this period would be as follows:

| Week Start | Week End | Derived Reg. Rate of Pay | Derived OT Rate of Pay |
|---|---|---|---|
| 3/1/2020 | 3/15/2020 | $43.25 | $64.88 |
| 3/16/2020 | 12/31/2020 | $32.45 | $48.68 |
| 1/1/2021 | 12/31/2021 | $40.85 | $61.28 |
| 1/1/2022 | 7/31/2022 | $52.88 | $79.31 |

Taking these assumptions into account, the undersigned computed that the alleged unpaid overtime wages yielded the maximum aggregate amount of $38,616.46. The undersigned yielded this amount by subtracting Plaintiff's assumed lawful wages, by Plaintiff's paid wages.

The method and formula for the derivation of the plaintiff's reasonable range of recovery under the breach of contract claim, assumes the following, after considering Defendants' contra-narrative of hours worked and compensation received:

      i.      Plaintiff's average weekly compensation, and average lawful weekly compensation during this same period would be as follows:

| Week Start | Week End | Avg. Weekly Compensation | Avg. Lawful Weekly Pay |
|---|---|---|---|
| 3/1/2020 | 3/15/2020 | $1,730.00 | $1,730.00 |
| 3/16/2020 | 12/31/2020 | $1,298.00 | $1,730.77 |
| 1/1/2021 | 12/31/2021 | $1,634.00 | $1,923.08 |
| 1/1/2022 | 7/31/2022 | $2,115.00 | $2,115.00 |

Taking these assumptions into account, the undersigned computed that the alleged unpaid wages yielded the maximum aggregate amount of $32,961.01. The undersigned yielded this amount by subtracting Plaintiff's actual compensation, by the amount Defendant's promised they would pay Plaintiff.

The Settlement Agreement requires that Defendants pay Plaintiff a settlement sum in the amount of $35,000 to resolve the case, payable in one lump sum payment. After attorneys' fees and costs Plaintiff will receive payments totaling $22,989.28.

Plaintiff believes that the Settlement Amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of additional discovery.

The number of overtime hours Plaintiff alleged he worked was a seriously contested issue that made the settlement of the claims asserted in this action difficult. The parties engaged in informal discovery to address various issues related to liability and damages. Through the course of this process, the key issue that evolved concerned whether or not Plaintiff was paid the appropriate overtime wage, for all hours worked, which Plaintiff calculated to be $38,616.46.

The net proceeds of the Settlement Agreement at the very least compensate Plaintiff for approximately 91% of Plaintiff's estimated maximum recovery for unpaid wages under the FLSA / NYLL, and approximately 106% of Plaintiff's estimated maximum recovery under his breach of contract claim.

Given the risks these issues present, the Settlement Amount is reasonable.

**B. The Settlement Agreement Avoids the Incurrence of Additional Expenses**

The second *Wolinsky* factor examines "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor also weighs in favor of *Cheeks* approval.

The Settlement Agreement resolves bona fide disputes over sharply contested issues, namely the total number of hours worked by Plaintiff and whether or not he was entitled to overtime wages as a matter of law. In that regard, Defendant asserts that Plaintiff worked substantially fewer hours than he alleges and was not entitled to overtime wages. During

settlement discussions, which included the informal exchange of documents, Defendant relied on the Check Register, which Plaintiff rejected as inaccurate.  If the trier of fact determined that Plaintiff worked fewer hours than alleged, it is likely that the minimum wages due to Plaintiff would be greatly reduced and, in fact, there is the possibility he would not be owed any wages. Proceeding to trial would consume significant amounts of time and resources, and Plaintiff faces the hurdles of rebutting Defendants' payroll records for certain periods of time. *See Garcia v. Jambox, Inc.,* 2015 WL 2359502, at *3 (S.D.N.Y. 2015) (Plaintiff's burden on the rebuttable presumption is high where Defendants have produced records).

The continued litigation of this case would necessitate no less than four (4) depositions, formal written discovery, review of voluminous records, and a trial. The associated costs and the continued prosecution of this case would necessitate the incurrence of substantial attorneys' fees and costs on both sides. Accordingly, it is in the interests of both parties to effectuate a settlement.

### C. The Seriousness of the Litigation Risk Faced by Plaintiff is High

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id at 335*. This factor also weighs heavily in favor of settlement.

Both parties face serious litigation risks as to both liability and damages, *to wit*, the amount of hours allegedly worked, and the amount of alleged underpayment of wages allegedly owed.

Defendants intended to produce time records and payroll records for the relevant period. Plaintiff, in order to succeed on the merits for this period, would have to rebut the presumption that Defendants did not pay Plaintiff in accordance with NYLL and/or the FLSA. Where, as here, Plaintiff has produced no documentation of his hours worked or compensation received for this period, and Defendants intended on producing records, Plaintiff's burden on this rebuttable presumption is high. *Gyalpo v. Holbrook Dev. Corp.*, 577 B.R. 629 (E.D.N.Y. 2017); *Garcia v. Jambox, Inc., supra* (S.D.N.Y. 2015).

Accordingly, the seriousness of the litigation risks on the part of both parties' continued prosecution of the case weighs in favor of settlement.

### D. The Settlement Agreement is a Fair Compromise Accomplished Between Experienced Counsel Following Court-Ordered Mediation

The fourth *Wolinsky* factor examines "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel" as well as the "possibility of fraud or collusion." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor weighs heavily in favor of *Cheeks* approval.

The contested issues, and arms-length negotiation by counsel demonstrate there was no fraud or collusion. *See Meigel v. Flowers of the World, NYC, Inc*., 2012 WL 70324, at *1 (S.D.N.Y. Jan. 9, 2012) ([T]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement). *Abrar v. 7-Eleven, Inc*., 2016 WL 1465360, at *2 (E.D.N.Y. 2016). Additionally, Plaintiff is satisfied with the settlement amount and voluntarily and willingly entered into the agreement.

Levin-Epstein & Associates, P.C. has obtained favorable decisions in wage-and-hour cases that have set precedent in this area of law. *See Singh v. Lintech Elec., Inc.,* 2021 WL 1062533, at *3 (E.D.N.Y. 2021) (securing dismissal of fraudulent conveyance actions, and cancellation of *lis pendens*, filed in FLSA action); *Suarez et al v. Brasserie Felix, Inc. et al*, Case No. 19-cv-07210, Dckt. No. 59 (hired by Plaintiffs' counsel to facilitate resolution in bankruptcy proceedings and secured $800,000 settlement on behalf of twelve (12) FLSA plaintiffs); *El Aalaoui v. Lucky Star Gourmet Deli Inc.,* 2021 WL 22787, at *1 (S.D.N.Y. 2021) (successfully vacating default judgment entered against FLSA defendants in the amount of $231,660); *Rivera v. Crabby Shack, LLC,* 2019 WL 8631861, at *5 (E.D.N.Y. 2019) (successfully arguing motion to enforce and approve settlement agreement on behalf of defendants)*; Pugh v. Meric*, 2019 WL 2568581, at *2 (S.D.N.Y. 2019) (post-bench trial order issued by the Hon. Judge Denise Cote, holding that the "wage notice penalty" in NYLL § 198(1)(1-b), by its very terms, does not mandate the imposition of damages); *Pugh v. Meric*, 2019 WL 3936748, at *5 (S.D.N.Y. 2019) (post-bench trial order reducing plaintiff's attorneys' fees award of $8,000 to $800); *Reyes v. The Picnic Basket, Inc.,* Case No. 18-cv-140, Dckt. No. 39, at *3-4 (S.D.N.Y. 2018) (successfully opposing Plaintiff's motion for conditional certification).

Moreover, the Settlement Agreement protects Plaintiff from the risk of default by requiring Defendants to execute a Settlement Agreement providing for recovery of attorneys' fees in the event of default. *See* Ex. A.

### III. The Allocation for Attorneys' Fees is Reasonable

Plaintiff bears the burden of proving the reasonableness of the fees sought. *See Savoie v. Merchs. Bank*, 166 F.3d 456, 463 (2d Cir. 1999). "Although courts may elect to award fees by considering either the lodestar method – the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended – or the percentage method – a percentage of the total amount recovered by the plaintiffs – '[t]he trend in [the Second] Circuit is toward the percentage method.'" *Perez v. Ultra Shine Car Wash, Inc*., 2021 WL 1964724, at *6 (S.D.N.Y. 2021) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 121 (2d Cir. 2005)). But even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Id.* (citing *Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)); *see also Guareno v. Vincent Perito, Inc.*, 2014 WL 4953746, at *2 (S.D.N.Y. 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015). The Court must also determine the reasonable hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd*., 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012). Courts can and should exercise broad discretion in determining a reasonable fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The method for determining reasonable attorney's fees in this Circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases. *See*

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008). In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits. This is known as the "forum rule." *See Simmons v. New York City Transit Auth*., 575 F.3d 170, 174-175 (2d Cir. 2009). Once the Court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended, in order to determine the presumptively reasonable fee. *See Arbor Hill*, 522 F.3d at 190.

      Plaintiff respectfully recommends an hourly rate of $450 for the services of Joshua D. Levin-Epstein ("Mr. Levin-Epstein"), and $325 for the services of Eunon Jason Mizrahi ("Mr. Mizrahi").[2] Other Courts have approved Mr. Levin-Epstein & Mr. Mizrahi's proffered billing rates. *See Dorson v. NYU Langone Hospital-Brooklyn,* Case No. 1:21-cv-04286-RER at 1/23/2023 Order (S.D.N.Y. 2023); *Christian v. MH Plumbing & Mechanical Corp. et al,* Case No. 1:22-cv-04774-BMC at Dckt. No. 21 at * 4 (E.D.N.Y. 2023); *Sims v. Crown Waste Corp. et al*, Case No. 1:22-cv-06047-BMC at Dckt. No. 23 at * 4 (E.D.N.Y. 2023); *Hernandez v. Yonkers Brewing Company LLC et al*, Case No. 7:21-cv-06951-PED at Dckt. No. 50 (S.D.N.Y. 2022); *Hoyos v. Milio et al,* Case No. 1:22-cv-01982-GWG at Dckt. No. 54 (S.D.N.Y. 2022); *Simmons v. Allied Universal Security Services, LLC et al*, Case No. 1:22-cv-03526-GHW at Dckt. No. 21 (S.D.N.Y. 2022); *Jones v. Questfleet LLC et al*, Case No. 1:21-cv-04042-TAM at 7/28/2022 Order (E.D.N.Y. 2022); *Stein v. Greenfeld et al,* Case No. 20-cv-01929-ARR-CLP, Dckt. No. 25 at *6-7 (E.D.N.Y. 2020); *Laureano-Capellan v. Chirichella et al,* Case No. 20-cv-00360-RER, July 15, 2020 Dckt. Entry (E.D.N.Y. 2020); *Feliciano v. Yoon et al,* Case No. 18-cv-06361-DLI-JO, March 27, 2020 Dckt. Entry (E.D.N.Y. 2020). Such fees are also within the range of reasonable rates for similarly experienced attorneys. *See Guerra v. Trece Corp.,* 2021 WL 1893593, at *2 (S.D.N.Y. 2021) (approving hourly rate of $450 for partner); *Meide Zhang v. Liang Zhang*, 2020 WL 9256464, at *6 (S.D.N.Y. 2020), *report and recommendation adopted as modified sub nom*. *Zhang v. Zhang*, 2021 WL 1154084 (S.D.N.Y. 2021) (approving $450 hourly rate as "reasonable"); *Salazar v. 203 Lena Inc*., 2020 WL 5627118, at *11 (S.D.N.Y. 2020), *report and recommendation adopted,* 2020 WL 6257158 (S.D.N.Y. 2020) (recommending hourly rate of $500).

      Applying the percentage method, Plaintiff respectfully requests an award of attorneys' fees in the amount of $11,492.92.

      Plaintiff further requests an award of $517.80 for costs incurred in filing fees ($402) and effecting service of process ($115.80). Proof of disbursements substantiating these fees are annexed hereto as Exhibit "C".

      Based on this, the requested attorneys' fees and costs of $12,010.72 should be found reasonable and permitted. The parties respectfully request that the Court approve the settlement as fair and reasonable and So Order the proposed Stipulation to Dismiss the case.

---

[2] A true and correct copy of Plaintiff's counsel's contemporaneous time and billing records, documenting each attorneys' hourly rate, hours expended, and tasks worked on, is annexed hereto as Exhibit "B".

**IV.    The Agreement Satisfies All Other Factors Considered for Approval**

The terms of the Settlement Agreement are consistent with *Cheeks*. For example, the release in the Agreement is limited to wage-and-hour claims and there are no confidentiality or non-disparagement provisions. The settlement was reached following arm's-length negotiations between counsel well-versed in wage-and-hour law and following extensive discovery.

In sum, the settlement is fair and reasonable, providing Plaintiff with a substantial recovery protected against the uncertainties and costs of trial, and should be approved by the Court.

We thank the Court for its time and consideration of this matter.

                                          Respectfully submitted,

                                          LEVIN-EPSTEIN & ASSOCIATES, P.C.

                                          By:   */s/ Jason Mizrahi*
                                                  Jason Mizrahi, Esq.
                                                  60 East 42nd Street, Suite 4700
                                                New York, NY 10165
                                                Tel. No.:  (212) 792-0048
                                                Email: Jason@levinepstein.com
                                                *Attorneys for Plaintiff*